[Cite as *Smith v. Clement*, 2024-Ohio-5220.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| State ex rel. Gregory Smith, et al., | : | Case No. 24CA28 |
| | | 24CA29 |
| Relators-Appellees, | : | |
| v. | : | |
| | | DECISION AND |
| Gregg Clement, et al., | : | JUDGMENT ENTRY |
| Respondents-Appellants. | : | **RELEASED 10/31/2024** |

APPEARANCES:

Thomas N. Spyker, Mrinali Sethi, Reminger Co., L.P.A., Columbus, Ohio, and Jonathan E. Robe, Robe Law Office, Athens, Ohio, for Respondents-Nelsonville Appellants.

Timothy L. Warren, Assistant Athens County Prosecutor, Athens County Prosecutor's Office, Athens, Ohio, for Respondent-Athens County Board of Elections Appellant.

Daniel H. Klos, Klos Law Office, Lancaster, Ohio, for Relators-Appellees.

Hess, J.

{¶1}  Relators-Appellees Gregory Smith and Vicki McDonald are residents of the City of Nelsonville involved in an initiative to return the City of Nelsonville to a statutory form of government from its current charter form of government (i.e., to abolish the city charter). Respondents-Appellants are seven members of Nelsonville City Council and the City of Nelsonville (collectively "Nelsonville"), and the Athens County Board of Elections ("BOE"). Respondents-Appellants appeal an order of the Athens County Court of Common Pleas granting a peremptory writ and injunction issued by the Athens County Court of Common Pleas.  The writ required Respondents-Appellants "to enact forthwith an ordinance providing for the submission of the proposed petition initiative to the

Nelsonville electors in the November 5, 2024 election and that the Athens County Board of Elections certify that Relators' petition initiative has enough valid signatures to qualify for placement on the general election ballot."

{¶2} Appellants raise several issues with the trial court's grant of the writ. First, they argued that Nelsonville had no clear legal duty to act under the city charter to pass an ordinance to place the issue on the ballot because the city charter does not apply to petitions to abolish the charter. Instead, Nelsonville argues that the Ohio Constitution, Article XVIII, § 9 applies and Appellees did not gather enough signatures under that provision. Appellants also argue that the trial court did not give them a full opportunity to submit evidence and brief the legal issues, the trial court's injunction is now moot, and the trial court should have denied the writ on laches grounds.

{¶3} We find that the trial court did not err in granting the writ. The Nelsonville City Charter provides the method to abolish the charter and appellees obtained a sufficient number of signatures. Because the petition to abolish the charter was sufficient, the charter requires Nelsonville City Council to pass the ordinance placing the abolition of the charter on the ballot. They have no discretion to do otherwise. However, we find that the trial court erred when it applied the signature requirement contained in the Ohio Constitution, because we find that the Nelsonville City Charter governs the process and contains the applicable signature requirement. However, we find this error harmless because appellees exceeded the number of signatures required by the charter. Additionally, for the reasons that follow, we find no merit to appellants other assignments of error. We affirm the trial court's decision to issue the writ.

## I.    FACTUAL & PROCEDURAL BACKGROUND

{¶4}    The material facts are undisputed. The appellees are residents of the City of Nelsonville who circulated a petition to abolish the city charter of Nelsonville. On June 27, 2024, the BOE sent a letter to the clerk of Nelsonville City Council confirming that there were 180 valid signatures on the petition. Appellees expected that city council would pass an ordinance at the next regular meeting on July 8, 2024 to place the issue of abolishing the charter on the ballot. However, city council refused to do so. Appellees consulted the city charter and determined that they should present it to the BOE, which they did on July 16, 2024. The BOE informed appellees that the BOE could not put it on the ballot without an ordinance from city council. On July 17, 2024 appellees consulted with legal counsel and on July 18, 2024, they filed a petition for a writ to compel city council to pass an ordinance placing the issue on the ballot for the November 5, 2024 election.

{¶5}    The trial court held a hearing on July 30, 2024 and issued an injunction and an alternative writ ordering Nelsonville to show cause on August 2, 2024 why it should not be required to comply with the writ.  Nelsonville filed an appeal rather than appear and answer the alternative writ. On August 24, 2024, we dismissed the appeal because the alternative writ was not a final appealable order. *See State ex rel. Smith v. Clement*, Athens App. No. 24CA17 (Aug. 24, 2024).

{¶6}    With the case back before the trial court, Nelsonville and the BOE filed answers to the mandamus petition, responses to the injunctive request, and motions for judgment on the pleadings.  On September 13, 2024, the trial court issued its final decision granting injunctive relief and issuing a peremptory writ ordering Nelsonville City

Council members to enact forthwith an ordinance to put the issue of abolishing the charter on the ballot for the November 5, 2024 election.

{¶7}    The trial court found that appellees had submitted their petition to the Nelsonville Clerk of Council and the Clerk appropriately contacted the BOE to determine the validity of the signatures. The BOE determined there were 180 valid signatures and that established the sufficiency of the petition. "Therefore, the Court concludes the initiative contains a sufficient number of valid signatures to proceed to city council for the passing of an ordinance to send it to the BOE to be placed on the general election ballot."

{¶8}    The trial court also found that after "the clerk decided the sufficiency of the petition, she informed the city council and the petition committee of the results. . . . As a result, this Court finds it then became incumbent upon the City Council to pass an ordinance sending the petition initiative to the board of elections for balloting in accordance with Ohio law." The trial court found that the Nelsonville City Charter § 10.02(B) uses the word "shall" and the word "shall" "makes the provision mandatory and not discretionary. City Council's duty at that point is ministerial."

{¶9}    The trial court acknowledged that the city charter has a process in Article 10 for "initiatives," "referendums," and "recalls." And that the Ohio Constitution has provisions in Article XVIII, § 8 and 9 for "creating" city charters and "amending" them. However, the trial court found that neither the city charter, nor the Ohio Constitution contained provisions that explicitly address "abolishing" a city charter. The court found that Article 10 of the city charter requires an initiative petition be signed by 15 percent of the electorate from the last gubernatorial election and that § 9 of Article XVIII of the Ohio Constitution required 10 percent of the electors' signatures. The trial court found that

these two provisions conflicted and therefore the Ohio Constitution's 10 percent signature requirement prevailed. However, because the 180 signatures met the 15 percent threshold of the city charter, the trial court found that it necessarily met the 10 percent threshold of the Ohio Constitution.

**{¶10}** The trial court engaged in a robust and thorough analysis of relevant case law and determined that neither city council, nor the BOE had discretion to reject a ballot initiative on substantive or constitutional grounds: "[I]t is not the role of the city council to substitute its judgment for that of the voters as to what matters should appear on the ballot; nor can city council assess the constitutionality of a proposal to amend the charter, because that role is reserved for the courts." The trial court also held, "As City Council cannot ignore their duty under the charter to pass an ordinance, similarly the BOE cannot refuse to place the initiative on the ballot because they believe it to be unconstitutionally sound."

**{¶11}** Essentially the trial court took a hybrid approach and applied the city charter provisions to the entire process except for the percentage signature requirement. There, because the Ohio Constitution's charter "amendment" process had a 10 percent figure, which differed from the 15 percent charter figure, the trial court applied that 10 percent figure to the signature requirement. Additionally, the trial court noted that the 10 percent figure was to be applied to "the number of votes cast in the last general election," citing *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 384 (1995), and this figure was not part of the record even though the trial court presumed the BOE used it to verify the sufficiency of the signatures in their June 27, 2024 letter. Therefore, the trial court ordered BOE to determine that figure.

**{¶12}** The BOE and Nelsonville appealed and obtained a stay of the writ and injunction from the trial court on September 15, 2024, which we lifted on September 18, 2024 upon appellees' motion. According to representations made in appellees' brief, which were supported by documentation and uncontroverted in appellants' brief, on September 23, 2024, city council passed an ordinance that the issue of whether to abolish the city charter be placed on the ballot for the November 5, 2024 general election. On September 26, 2024, the BOE adopted a resolution to accept the petition to abolish the city charter for placement on the ballot for the November 5, 2024 general election. In accordance with the trial court's order and *State ex rel. Huebner, supra*, the BOE determined that there were 930 votes in the 2023 general municipal election and 10 percent of them would be 93 votes.

## II.     ASSIGNMENTS OF ERROR

**{¶13}** Nelsonville presents three assignments of error:

I.     The trial court erred by granting a peremptory writ of mandamus where Nelsonville had no clear legal duty to act under Section 10.02 of the Nelsonville Charter.

II.     The trial court erred by granting a peremptory writ of mandamus under R.C. 2731.06 without allowing for Nelsonville to present evidence on unlitigated factual issues and fully brief the pertinent issues of law or issuing an alternative writ.

III.     The trial court erred by granting a peremptory writ of mandamus without considering or addressing the laches argument raised in Nelsonville's motion for judgment on the pleadings.

**{¶14}** The BOE did not present assignments of error and instead only presented issues for review. *See* App.R. 16(A)(3) and (4). Therefore, we could completely disregard the BOE's brief. App.R. 12(A)(2); *Pankey v. Ohio Adult Parole Auth.*, 2011-Ohio-4209, ¶ 4 (10th Dist.). Those three issues are: (1) whether the trial court used the correct standard

for determining the sufficiency of valid signatures; (2) whether the injunction is moot; and (3) whether appellees' claims are barred by laches. The BOE's first and third issues are subsumed by Nelsonville's first and third assignments of error and are addressed there. We will briefly discuss the mootness question raised concerning the injunctive relief because we prefer to decide cases on their merits rather than procedural technicalities. *Troon Mgt., Ltd. v. Adams Family Tr.,* 2023-Ohio-3489, ¶ 17 (4th Dist.).

**{¶15}** Additionally, appellees argue that we should remand this matter so that the trial court can consider their request for attorney fees. However, the trial court issued its final writ without granting appellees attorney fees and appellees did not file a cross appeal and raise the trial court's failure to award them attorney fees as an assignment of error. See App.R. 4(B)(1). Therefore, we lack jurisdiction to consider that issue. *O'Keeffe v. McClain*, 2021-Ohio-2186, ¶ 18 (court lacks jurisdiction to consider issue not raised through a cross appeal and appellee forfeits the issue).

### III.     LEGAL ANALYSIS

#### A. Injunctive Relief & Mootness

**{¶16}** The trial court granted injunctive relief to the appellees in which it restrained Nelsonville and the BOE from preventing city council from passing the ordinance to place the initiative to abolish the city charter on the ballot for the November 5, 2024 election. It also enjoined the BOE from refusing to place the initiative on the ballot.

**{¶17}** Both the appellees and the BOE argue that the injunction is now moot. The BOE argues that the trial court erred in issuing the injunction because major events on the Secretary of State's calendar had passed by the time the injunction was issued on September 13, 2024. However, this argument is plainly refuted by the additional facts

presented by appellees. Despite the calendar dates, city council passed the ordinance to place the initiative to abolish the city charter on the ballot, it was presented to the BOE, the BOE accepted the petition for placement on the ballot, the BOE confirmed the total voter count in the 2023 general municipal election was 930, the BOE calculated that 10 percent of 930 constituted 93 signatures and the 180 verified signatures exceeded this threshold, and the issue of whether to abolish the city charter is on the official November 5, 2024 ballot.

{¶18} The appellees argue that any errors in the trial court's issuance of the injunction are now moot because the injunction has expired. The city council has voted on the ordinance and the BOE placed it on the ballot. No relief can be granted by modifying or lifting the injunction that prevented interference with this process which has come full circle.

{¶19} An issue becomes moot when it presents only a hypothetical or academic question, and a judicial resolution of the issue would have no practical significance. *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55. "It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and render judgment which can be carried into effect." *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). Consequently, when an appellate court discovers that an event has occurred that renders moot one of the questions in the case before it, that court must dismiss the part of the case that has become moot. *Hagerman v. Dayton*, 147 Ohio St. 313 (1947), paragraph one of the syllabus; *Darr v. Livingston*, 2017-Ohio-841, ¶ 13 (10th Dist.).

{¶20}  The parties have presented evidence from outside the record in arguing that the injunction is now moot. A court may consider evidence from outside the record to determine whether an issue has become moot. *State ex rel. Cincinnati Enquirer v. Dupuis,* 2002-Ohio-7041, ¶ 8. Moreover, in deciding whether an issue is moot, an appellate court, acting sua sponte, may take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including "public records and government documents available from reliable sources on the internet." *Hoerig v. Bowling Green State Univ.*, 2023-Ohio-3189, ¶ 15 (6th Dist.); *Darr v. Livingston*, 2017-Ohio-841, ¶ 16 (10th Dist.) (court properly sua sponte considered county auditor's online records). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ohio Evid. R. 201(B). A court may use its discretion and sua sponte take judicial notice, and it may be taken at any stage of the proceeding. Ohio Evid. R. 201(C) and (F).

{¶21}  In support of their arguments, the appellees and the BOE have presented facts concerning calendar dates, the status of the official ballot, and the number of voters in the various relevant prior elections that could form the basis for the 10 and 15 percent calculations. The accuracy of these representations can readily be determined from the Athens County Board of Elections website, a government website and reliable source on the internet. We can sua sponte take judicial of these facts relevant to the mootness issues: (1) the total voters in the 2023 general municipal election was 930; (2) the total voters in the 2022 gubernatorial election was 929; and (3) the issue of whether to abolish

the city charter of Nelsonville has been placed on the November 5, 2024 official ballot.[1] The 2024 Ohio Elections Calendar is available on the Ohio Secretary of State's website.[2]

**{¶22}** Upon review of the status of the ballot issue and relevant facts, we agree with appellees that the injunction, which enjoined the appellants from interfering with the city council and the BOE's processes, has now expired and any alleged errors the trial court made in granting it are moot. We reject the BOE's second issue presented. We dismiss that portion of the appeal concerning the injunction.

### B. The Peremptory Writ of Mandamus

**{¶23}** For its first assignment of error, Nelsonville argues that the process to abolish a city charter is not governed by Article X of the city charter. Instead, it argues that the right to amend and enact a charter are governed by the Ohio Constitution, Article XVIII, § 8 and 9. And that the act of "abolishing" a charter is the same as "amending" a charter. Additionally, Nelsonville argues that under the Ohio Constitution signature requirement for amending a charter, the appellees did not have enough valid signatures.

**{¶24}** The trial court found that the city charter governed the process and it characterized the petition as an "initiative." The court found that the city charter governed the process. However, it found that the signature requirements in the charter and the Ohio Constitution conflicted, so it applied the Ohio Constitution's 10 percent of the total vote cast in the last preceding general municipal election as the signature requirement.

**{¶25}** The relevant provisions at issue in this case are:

---

[1] The voter totals are from https://www.boe.ohio.gov/athens/c/elecres/20231107precinct.pdf and https://www.boe.ohio.gov/athens/c/elecres/20221108precinct.pdf. The November 5, 2024 official ballot is https://lookup.boe.ohio.gov/vtrapp/athens/getballot.aspx?elect=20241105G&prsid=0022__1&bpty=X. The total number of registered voters in Nelsonville, which "varies over time" *see Huebner, supra,* at 384-385, is available at https://lookup.boe.ohio.gov/vtrapp/athens/vtrreport.aspx.
[2] https://www.ohiosos.gov/globalassets/publications/election/2024electionscalendar_11x17.pdf.

Nelsonville City Charter, Article X – INITIATIVE, REFERENDUM AND RECALL

§ 10.01 **General Authority.**
A. Initiative.
The qualified voters of the City shall have the power to propose ordinances or resolutions to Council provided that such power shall apply only to the first ordinance, resolution or other measure required to be passed . . . . If Council fails to adopt an ordinance or resolution so proposed without any change in substance the voters may adopt or reject said ordinance or resolution at the general, primary or special election.

§10.02 **Commencement of proceedings; petition's committee.**
A. Any five (5) qualified voters may commence initiative, referendum or recall proceedings by filing with the Clerk of Council a written statement that they constitute the petitioner's committee and will be responsible for circulating and filing the petition . . . .
B.  . . . Within ten (10) days of receipt of a petition, the Clerk of Council shall determine its sufficiency and advise the petitioners' committee and Council of such findings. If the petition is found to be sufficient, Council shall pass an ordinance at its next regular meeting that the issue be placed on the ballot in accordance with Ohio law . . . .

§ 10.03 **Petitions.**
A. Number of signatures.
Initiative, referendum and recall petitions must be signed by qualified electors of the City in number to at least fifteen percent (15%) of the total number of the votes cast within the City in the last gubernatorial election.

Nelsonville City Charter, Article XI – GENERAL PROVISIONS

§ 11.04 **Amendments.**
      This charter may be amended as provided in Article XVIII of the Ohio Constitution.

OHIO CONSTITUTION, Article XVIII, § 9 Amendment of charter; referendum

Amendments to any charter framed and adopted as herein provided may be submitted to the electors of a municipality . . . and upon petitions signed by ten per centum of the electors of the municipality setting forth any such proposed amendment, . . . .

OHIO CONSTITUTION, Article XVIII, § 14 Municipal Elections

. . . . The percentage of electors required to sign any petition provided for herein shall be based upon the total vote cast at the last preceding general municipal election.

**{¶26}** Neither the city charter nor the Ohio Constitution specifically, by using the word "abolish" or similar clear language, address the process for abolishing the city charter. Similarly, there are no definitions for "initiative," "referendum," "recall," or "amendment" that expressly and clearly include the concept of "abolishing" a charter. The Ohio Constitution, Article II, Section 1f states that initiative and referendum powers are reserved to the people of each municipality on questions that municipalities govern. The Supreme Court of Ohio has defined an initiative as "a proposal which allows the people to directly enact a law if they accept the proposal in an election" and a referendum as "a proposal which allows the people to directly repeal a law which has already been enacted by the legislature." *State ex rel. Flak v. Betras,* 2017-Ohio-8109, ¶ 10, fn. 5, *abrogated on other grounds.* The city charter defines these terms the same as the Court did in *Flak.* Article §10.01 describes an initiative as "the power to propose ordinances or resolutions" and a referendum "the power to reject any adopted ordinance or resolution." Recall is the "power to propose the removal of any elected City official." A municipal charter is "the creative act of incorporation . . . together with the defining powers of the corporation." *Black's Law Dictionary* (8th Ed. 2004). Based on these definitions, a proposal to abolish the city charter most closely fits the definition of an initiative. Under Ohio Constitution, Art. XVIII, § 8, a city charter is "framed" by a commission, and thus is not an "ordinance" that could be "repealed" by a referendum. However, a law could be passed to abolish it, which would be an initiative.

**{¶27}** Provisions governing "initiatives" and "referendums" do not govern "amendments" to the city charter. *State ex rel. Sanduskians for Sandusky v. Sandusky*, 2022-Ohio-3362, ¶ 28 (the Sandusky charter adopted R.C. 731.28 to govern its initiatives

and referendum procedures and that process could not be used to adopt an amendment to the charter). Here, the city charter contains its own provisions governing initiatives and referendums in Article 10, which differ from those set forth in R.C. 731.28. The city charter also contains a separate provision for amendments to the charter in Article §11.04 and provides, "This Charter may be amended as provided in Article XVIII of the Ohio Constitution."

{¶28} Amending a city charter is not the same as abolishing or abandoning it. *Switzer v. State ex rel. Silvey,* 103 Ohio St. 306 (1921). In *Switzer*, the city of Dayton had operated under a city charter since 1913 that provided for a "modified plan" which was a combination of "the commission plan" and some portion of "the city manager plan" and was denominated in the charter as a "commission manager plan." *Id.* at 310. Amendments to Dayton's charter were governed by Article XVIII, Section 9 of the Ohio Constitution. Silvey and others wanted to change Dayton's charter's commission manager plan to a "federal plan." The "federal plan" was one of three types of optional plans provided for in the Ohio statute, General Code Section 3515-1 et seq. *Id.* at 310 (the three types were (a) commission plan, (b) city manager plan, and (c) federal plan). But instead of using the amendment process for amending a city charter outlined in the Ohio Constitution, Silvey attempted to modify the charter by using provisions in the General Code, Section 3515-69 which governed the abandonment of any of the three plans described in the General Code. That section required the municipality to wait five years before it could abandon a plan and it outlined detailed steps to take to do so. *Id.* at 311.

{¶29} The Supreme Court of Ohio rejected Silvey's attempt to use the "abandonment" provisions in the General Code to modify Dayton's charter. The Court found that Dayton had adopted a charter and therefore none of the statutory provisions governing the three plans applied to Dayton. Likewise, the statutory provisions in the General Code governing abandonment of plans did not apply to Dayton. "The City of Dayton, never having operated under the act, is in no wise governed or controlled by the act. The relators have clearly mistaken their course of procedure for amendment of the charter. Dayton having operated under a charter framed by its own commission, of its own choosing, instead of a plan framed by the General Assembly, is . . . immune or exempt from the operation of the statute." *Id.* at 311-312. The Court held that if Silvey wanted to change the plan provided for in the charter, it needed to use the amendment procedure in the Ohio Constitution. *Id.* at 313-314. The Court also frankly acknowledged that what Silvey was attempting to do was not to amend the charter at all, but to abandon it. The Court astutely criticized Silvey and made clear that an abandonment of a charter and an amendment of a charter are *not* the same:

> It should be frankly stated in all fairness to the relators [Silvey's group] that they do not pretend to offer any amendment to the charter, thereby to change said charter agreeable to the state Constitution. Their proposal is not an amendment in name or nature, but, instead, is an abandonment. By what system of legal legerdemain [i.e. sleight of hand, deception] it can be held that an entire and essential abandonment, so labeled on its face, is an amendment, I cannot comprehend.

*Switzer v. State ex rel. Silvey*, 103 Ohio St. 306, 315 (1921).

{¶30} The distinction between amending a charter and abolishing it was made clear again by the Supreme Court of Ohio in *City of Youngstown v. Craver,* 127 Ohio St. 195 (1933) in a case almost on point with the facts before us. In *Crave*r, the people of

Youngstown – like the appellees here – sought to abolish the city charter. Amendments to Youngstown's charter, like amendments to Nelsonville's charter, were governed by Ohio Constitution, Article XVIII, Section 9. And, both Youngstown and Nelsonville had separate provisions in their charters governing initiatives and referendums. However, where Nelsonville adopted its own initiative and referendum procedures in Article X of its charter, Youngstown, in Section 82 of its charter, adopted the initiative and referendum provisions in General Code 4227-1 and 4227-13, except that it changed the number of electors necessary to initiate a petition from 6 percent to 3 percent. *Id.* at 200. The Court held that under the General Code initiative and referendum provisions Youngstown adopted via Section 82 of its charter, it could pass an initiative to abolish the charter. The initiative to abolish the charter was not governed by the amendment procedures in the Ohio Constitution, Article XVIII, § 8 and 9.

> It is the holding of this court that the people of the city of Youngstown thus had ample power to submit the proposal in question, even though it entails the complete abolition of the city charter; that such action is not in derogation of any provision of the Constitution of the state of Ohio.

*Craver* at 203. The Court rejected Craver's argument that the trial court erred when it found that the Ohio Constitution, Article XVIII, § 8 and 9 were not applicable to the initiative. Craver identified this argument as his fourth assignment of error (of 14 total assignments of error) and the Court condensed or "boiled down" the 14 assignments of error to 5 and restated his fourth assignment of error as their first: "First, did the court err in deciding that sections 8 and 9 of article XVIII are not applicable to a proposal to be submitted to the electors of the city of Youngstown for the abolishment of the home rule charter of the city of Youngstown and the return to government under the General Code?" *Id.* at synopsis. The Court stated that its holding that Youngstown's charter could be

abolished through the initiative and referendum procedures adopted in Section 82 of its charter, meant that Craver's fourth (the Court's first) assignment of error, which argued that the Ohio Constitution's amendment provisions applied, had been disposed of, "This holding disposes of all except the eighth, ninth, and tenth assignments of error [involving allegations of deception]." *Id.* at 204 (the Court went on to find no evidence of deception by the people of Youngstown, overruling the eighth, ninth, and tenth assignments of error); *see also* Baldwin's Ohio Practice, *Local Government Law – Municipal*, Oh.Mun.L. §4:41 (August 2024 Update) ("It was held [in *Craver*], accordingly, that the question of the repeal or abandonment of a charter may be submitted by initiative petition to the electors of a municipality.").

**{¶31}**   Based on the holding in *Craver*, we find that the initiative to abolish the city charter of Nelsonville is governed by Article X of its charter, just as the initiative to abolish the city charter of Youngstown was governed by Section 82 of its charter. The trial court properly applied Article § 10.02 to the petition. Because Article X governs initiatives to abolish the city charter, Ohio Constitution, Article XVIII, § 9 has no application. Therefore, the signature requirement in §9 that the petition be signed by 10 percent of the electors based upon the total vote cast in the last preceding general municipal election is likewise inapplicable. It does not conflict with the signature requirement in Article §10.03(A) of the charter, which states that initiative petitions must be signed by qualified electors in a number to at least 15 percent of the total number of the votes cast within the city in the last gubernatorial election. Therefore, instead of using a hybrid approach, which applied parts of the city charter and parts of the Ohio Constitution, the trial court should have applied the city charter to the entire process.

**{¶32}** Thus, we find that the trial court erred when it applied the 10 percent of the total votes cast in the last general municipal election as set forth in Ohio Constitution, Art. XVIII, § 9 and did not apply 15 percent of the total votes cast in the last gubernatorial election. However, we find this was harmless error as it did not affect the outcome or prejudice the parties. The appellees obtained 180 valid signatures. The trial court's calculation found that the total number of signatures required was 93, which was based on 10 percent of the 930 votes cast in the 2023 general municipal election. Under the correct calculation under Article §10.03(A), the total number of signatures required is 139, which is based on 15 percent of the 929 votes cast in the 2022 gubernatorial election. The 180 valid signatures appellees obtained comfortably clears both bars.

**{¶33}** Additionally, we reject the BOE's argument that the proper calculation under Ohio Constitution, Art. XVIII, § 9 is 10 percent of the total registered voters in Nelsonville, which at the time they filed their brief on September 27, 2024, was 2,453 register voters (i.e., 245 valid signatures).  First, as we have explained, the city charter § 10.03(A) applies to initiatives to abolish the city charter and requires 15 percent of the total votes cast in the last gubernatorial race.  Second, the Supreme Court of Ohio soundly rejected the argument that the "total number of registered voters of the municipality" should be the base used in Ohio Constitution, Art. XVIII, § 9. *See Huebner, infra.* Not only is this the correct application of Article XVIII, §14 ("The percentage of electors required to sign any petition provided for herein shall be based upon the total vote case in the last preceding general municipal election.") but it is supported by public policy. The total number of registered voters in the city varies over time and cannot be known with any certainty when the petitioners are gathering signatures.

> It is also the correct result for reasons of public policy. . . . [T]he number of actual electors of a municipality may vary over time based on voter registration drives, annexations, or other events. Conversely, this uncertainty does not exist if Section 14 [of Ohio Constitution, Art. XVIII] is applied, since petitioners know the precise number of valid signatures required for submission of the issue to the electorate. Furthermore, this interpretation fosters the goal of providing citizens with access to the ballot, a foundation of our democracy. . . . *We note as well that the Secretary of State, the state's chief election officer, has urged this interpretation of the relevant provision of the Ohio Constitution.*

(Emphasis added.) *State ex rel. Huebner v. W. Jefferson Village Council,* 75 Ohio St. 3d 381, 384-385 (1995).

{¶34} We overrule Nelsonville's first assignment of error and reject the BOE's first issue presented.

### C. Nelsonville's Answer to the Amended Petition and Additional Briefing

{¶35} Nelsonville contends that it did not get an opportunity to fully present facts or evidence in defense of the mandamus petition. We reject this argument. First, Nelsonville did not appear and answer the alternative writ on August 2, 2024 as ordered by the trial court and present their case fully. Rather, Nelsonville immediately filed an appeal of the alternative writ, which was dismissed for lack of finality. We do not suggest that Nelsonville had to forfeit its right to appeal and we recognize that the trial court's alternative writ contained language that stated it was a final, appealable order. However, App.R. 4 gives a party *30 days* to file an appeal. Nelsonville had plenty of time to appear on August 2, 2024 and present its case in full and still file a timely appeal to safeguard its appellate rights. Nelsonville's first appeal served only to inject, intentionally or not, unnecessary delay in the proceedings, which by their nature require speedy resolution.

{¶36} Second, the material facts in this case are straightforward and undisputed, the legal question is narrow, and the relevant legal authority is limited. Nelsonville

answered the amended petition, and all the parties have prepared well-reasoned, thorough legal arguments for their positions in the multiple filings made in the trial court and in their appellate briefs and oral arguments. There are no statutory provisions that require a court deciding a mandamus action to hold an evidentiary hearing. *See* R.C. Chapter 2731; *e.g.*, Loc.App.R. 16 (evidence related to mandamus is submitted by agreed statements of facts, affidavits, etc. Oral testimony will not be heard unless ordered by court). Additionally, Nelsonville cites to nothing in the record to support its contention that the trial court failed to consider Nelsonville's evidence or arguments. Most importantly, Nelsonville fails to identify any evidence it was unable to present in its filings that would have materially affected the outcome in the trial court. Therefore, it cannot show prejudice from any alleged procedural error.

> "To demonstrate a reversible denial of due process, as with any alleged error on appeal, an appellant typically must make a showing of identifiable prejudice." Thus, to support reversal, the record must show affirmatively "not only that error intervened, but that such error was to the prejudice of the party seeking such a reversal."

*Flynn v. State Med. Bd. of Ohio,* 2016-Ohio-5903, ¶ 50 (10th Dist.).

**{¶37}** We overrule Nelsonville's second assignment of error.

### D. Laches

**{¶38}** For their final argument, Nelsonville and the BOE argue that the trial court erred in rejecting their laches defense. They contend that the appellees waited ten days after learning that Nelsonville would not vote on an ordinance before filing their petition for mandamus. They assert that they have been prejudiced by the delay because "final proofing of the ballot" was underway on July 18, 2024 when appellees filed the mandamus petition and the ballots were supposed to be submitted for printing on September 14,

2024.  The BOE asserts that it had to "resubmit ballots to voters based on this case, further costing taxpayer money."

**{¶39}**  The appellees argue that they responded expeditiously. They presented the initiative to the BOE after city council refused to vote on it because Article §10.01(A) contains the following: "If Council fails to adopt an ordinance or resolution so proposed without any change in substance, the voters may adopt or reject said ordinance or resolution at a general, primary, or special election." It was only after this attempt was made and rejected by the BOE that appellees believed they had exhausted their options and sought legal advice. They filed their mandamus petition two days after the BOE rejected them.

### 1. Standard of Review

**{¶40}**  "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey*, 15 Ohio St.3d 34, 35 (1984). Laches is predominantly a question of fact to be resolved according to the circumstances of each individual case.  The application of the doctrine of laches is within the sound discretion of the trial court.  A reviewing court must therefore refrain from reversing a trial court's decision pertaining to the application of laches absent an abuse of discretion. *State ex rel. Scioto Cty. Child Support Enf't Agency v. Gardner*, 113 Ohio App.3d 46, 56–57 (4th Dist.1996).

### 2. Legal Analysis

**{¶41}**  The elements of a laches defense are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel.*

*Carrier v. Hilliard City Council*, 2016-Ohio-155, ¶ 8. "[A] party asserting a laches defense must demonstrate that it has been prejudiced by the other party's delay." *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 2013-Ohio-4616, ¶ 10. Prejudice must be material before laches will bar relief. *State ex rel. Rife v. Franklin Cty. Bd. of Elections*, 70 Ohio St.3d 632, 635 (1994). However, a laches defense "rarely prevails in election cases." *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 2016-Ohio-367, ¶ 8.

{¶42} The trial court did not explicitly use the term "laches' in its decision, but it did discuss potential prejudice to Nelsonville and the BOE due to the timing of the mandamus petition. It noted that the presidential election was 53 days away and that there may be some additional expense incurred by the city but found that any extra expenses were partly the fault of city council for failing to promptly act in accordance with the charter.

{¶43} We find that the trial court did not abuse its discretion when it did not dismiss the petition on laches grounds. First, there was no unreasonable delay. The appellees acted expeditiously and explained why they took additional time to present the initiative to the BOE before filing the mandamus action. The petition for mandamus was filed two days after it was apparent it was their only remaining recourse, and it was filed only ten days after the city council refused to carry out their obligations under the charter.  It was filed 110 days before the general election date. The BOE asserts that ballots were printed on September 20, 2024 and absentee ballots were first mailed to overseas citizens and military personnel on September 20, 2024. The mandamus petition was filed more than 60 days before the printing and mailing of these ballots.

**{¶44}** We overrule Nelsonville's third assignment of error and the BOE's third issue for review.

IV. CONCLUSION

**{¶45}** We find that the trial court properly issued a writ of mandamus compelling appellants to enact an ordinance submitting the initiative to abolish the Nelsonville City Charter on the ballot for the November 5, 2024 election. However, we find the trial court erred in applying the signature requirement contained in the Ohio Constitution (10 percent of the total votes cast at the last preceding general municipal election). The proper signature requirement is in Article §10.03(A) of the city charter (15 percent of the total number of the votes cast within the city in the last gubernatorial election). We find this error was harmless as it did not affect the results; the number of valid signatures readily surpassed the percentage required under Article §10.03(A). We overrule appellants' assignments of error and affirm the trial court's judgment, as modified herein.

JUDGMENT AFFIRMED, AS MODIFIED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED, AS MODIFIED and that appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
Michael D. Hess, Judge



### **NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**