[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Nelsonville v. Athens Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-4363.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4363

THE STATE EX REL. THE CITY OF NELSONVILLE ET AL. *v.* ATHENS COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Nelsonville v. Athens Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-4363.]**

*Mandamus—Prohibition—Elections—Writs sought to order board of elections to remove a slate of statutory offices from the general-election ballot—Writ of mandamus denied because relators identified no statute or other authority requiring board to remove the statutory offices from ballot—Writ of prohibition denied because board did not exercise quasi-judicial authority.*

(No. 2025-1061—Submitted September 10, 2025—Decided September 17, 2025.)

IN MANDAMUS and PROHIBITION.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} In the November 2024 general election, voters of the City of Nelsonville passed a ballot issue to change their city's government from a charter government to a statutory government. The change is scheduled to be effective January 1, 2026. As part of the transition, elections to fill the government offices provided for by statute are set to be held in the November 2025 general election. Respondent, the Athens County Board of Elections, has certified candidates to the ballot for the statutory offices. But on August 11, 2025, the Nelsonville City Council passed an ordinance purporting to repeal the ballot issue that changed the city's form of government. Because relators, the city and city council (collectively, "Nelsonville"), believe that there will now be no transition to a statutory government, they seek writs of mandamus and prohibition ordering the board to remove the statutory elections from the ballot. Andrea Nicole Thompson Hashman, a candidate for city auditor, has intervened as a respondent.

{¶ 2} Because Nelsonville has identified no statute or other authority requiring the board to remove the slate of statutory offices from the November 2025 ballot, we deny the writ of mandamus. And because the board did not exercise quasi-judicial authority, we deny the writ of prohibition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} Nelsonville is a city in Athens County. In 1994, the city's voters adopted a city charter, which became effective January 1, 1995.

{¶ 4} In the November 2024 general election, Nelsonville's voters approved a citizen-led ballot issue, known as "Issue 23," to abolish the city charter and return the city to a statutory form of government. The abolishment of the charter and change to statutory government is scheduled to be effective January 1, 2026. Nelsonville's city council initially refused to pass an ordinance placing Issue 23 on the November 2024 ballot, but citizens involved in the ballot initiative sought and obtained a writ of mandamus from the Athens County Court of Common Pleas

ordering the city council to do so.  The Fourth District Court of Appeals affirmed the granting of the writ.  *See Smith v. Clement*, 2024-Ohio-5220, ¶ 45 (4th Dist.).

{¶ 5} The body of the petition, which the ballot language copied nearly verbatim, stated as follows:

> Shall the Charter of the City of Nelsonville, Ohio, submitted to the Electors of the City of Nelsonville on November 8, 1994, which became effective January 1, 1995, and its subsequent amendments, be abolished and return to the same form of government as it had prior to and up to January 1, 1995, to be effective on Jan 1, 2026?
>
> Upon approval of this initiative submitted to the electors of the City of Nelsonville at the general elections on November 5, 2024, the election of all city offices which were required by the form of government of Nelsonville Ohio prior to January 1, 1995, shall be elected during the municipal elections of 2025.  Those elected shall take office on January 1, 2026.

{¶ 6} As part of the transition, elections for statutory offices will be held in the November 2025 general election.  Specifically, elections will be held for mayor, city auditor, city treasurer, city law director, seven city council members, and council president.  The board of elections has been preparing for the elections since early 2025.  The statutory races are partisan, and February 5, 2025, was the deadline for filing declarations of candidacy for partisan candidates.  The board certified several partisan candidates shortly thereafter.  The deadline for independent candidates to file nominating petitions was May 5, and the board certified several independent candidates on July 15.

{¶ 7} Nelsonville asserts that the board has certified candidates to the ballot for mayor, city auditor, city council, and city president. However, no candidates have been certified for city treasurer or city law director. In addition, one candidate has been certified to run for a city-council position under the city charter, a term which is set to begin in December.

{¶ 8} Meanwhile, Nelsonville states that members of an advisory commission created to implement Issue 23 identified concerns related to the transition, including "several issues that would cause significant disruption to City services." Among these issues is an alleged "gap in December 2025 where Nelsonville would have no elected officials for the entire month." Attempting to remedy these concerns, Nelsonville's city council passed an ordinance placing a proposed city-charter amendment on the May 2025 ballot. If adopted, the amendment would have modified, but not repealed, the city charter. The voters rejected the proposed amendment.

{¶ 9} Following the failure of its proposed charter amendment, on August 11, the city council passed an ordinance ("Ordinance 54-25") that purports to repeal Issue 23 and its abolishment of the city charter. The ordinance passed as an emergency measure and immediately took effect. Specifically, Ordinance 54-25 provides, in relevant part:

1. Issue 23, passed by the voters on November 5, 2024, which purports to abolish the Nelsonville City Charter and transition the City to a statutory form of government, is hereby repealed and declared null and void as of the effective date of this Ordinance.

2. Nelsonville City Charter remains in full force and effect, and all existing ordinances, resolutions, and governmental structures established under the charter shall continue uninterrupted until

lawfully amended or repealed in accordance with the Ohio Constitution and Nelsonville City Charter.

…

4. The City Council Clerk is directed to certify a copy of this Ordinance and transmit it to the Athens County Board of Elections.

{¶ 10} Nelsonville states that the enactment of the ordinance "moots the need for, and authority to conduct[,] the current slate of statutory elections set to appear on the November 2025 ballot." On August 13, Nelsonville's clerk of council transmitted a certified copy of Ordinance 54-25 to the board. That same day, the board met and took no action regarding the pending statutory races. In addition, approximately two weeks after Nelsonville filed its complaint in this extraordinary writ action, it filed a written protest with the board against several write-in candidates for the statutory offices.

{¶ 11} On August 13, Nelsonville filed its complaint for a writ of mandamus or, in the alternative, a writ of prohibition. It seeks a writ "ordering respondent to decertify, or otherwise remove, the current slate of statutory positions set to appear on the November 2025 ballot for elected positions within the city of Nelsonville."

{¶ 12} We granted a motion by Andrea Nicole Thompson Hashman, a candidate for city auditor, to intervene as a respondent. 2025-Ohio-2957. We initially dismissed the case for want of prosecution, 2025-Ohio-2957, but later granted Nelsonville's motion for reconsideration of the dismissal and reinstated the case, 2025-Ohio-3059. We also denied a motion by the board to join the secretary of state as a necessary party to the case. 2025-Ohio-3098.

## II. ANALYSIS

### A. Nelsonville's motion for leave to file an amended affidavit

{¶ 13} The day it filed its evidence and merit brief, Nelsonville also filed an unopposed motion for leave to file an amended affidavit and attached the amended affidavit. The motion seeks to replace the verification affidavit, signed by Nelsonville's city attorney, that Nelsonville attached to its complaint. The original affidavit stated: "Pursuant to Rule 12.02 I have reviewed the above allegations, I have personal knowledge of these matters in my role as City Attorney for the City of Nelsonville, and I attest that allegations contained in the above Complaint are true *to the best of my knowledge*." (Emphasis added.) The proposed amended affidavit is nearly identical, except it replaces the language "to the best of my knowledge" with "based on my personal knowledge."

{¶ 14} Nelsonville seeks to file the amended affidavit to cure any potential defect with the original affidavit's statement that the allegations in the complaint were true "to the best of [the affiant's] knowledge." Affidavits that attest that the allegations in the complaint are true to the best of the affiant's knowledge do not comport with S.Ct.Prac.R. 12.02(B). *See State ex rel. Esarco v. Youngstown City Council*, 2007-Ohio-5699, ¶ 15-16. Because Nelsonville is "entitled to an opportunity to cure the defect, and because permitting the amendment will cause no delay or prejudice," *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 2015-Ohio-3761, ¶ 14, we grant the motion.

### B. Nelsonville's motion for leave to file rebuttal evidence

{¶ 15} The day Nelsonville filed its reply brief, it also timely filed a motion for leave to file rebuttal evidence under S.Ct.Prac.R. 12.08(A)(2)(d) and attached the proposed evidence. We grant the motion in part and deny it in part.

{¶ 16} Rebuttal evidence explains, refutes, or disproves facts introduced into evidence by the adverse party, and is limited in scope to such evidence. *State*

*ex rel. Adkins v. Cole*, 2025-Ohio-1026, ¶ 8. Nelsonville seeks to introduce three categories of rebuttal evidence.

{¶ 17} First, Nelsonville seeks to introduce evidence to rebut an argument made by intervenor Hashman that one of Nelsonville's city council members who voted in favor of Ordinance 54-25 is "incompetent to hold the office a Nelsonville City Council member" because he previously pleaded guilty to a disqualifying felony under R.C. 2961.01 ("civil rights of convicted felons"). Hashman argues that the council member cannot legally serve on city council and that the ordinance would not have passed as an emergency motion without the council member's vote. Nelsonville seeks to introduce rebuttal evidence related to the council member's appointment. We allow this rebuttal evidence because it tends to disprove the premise of Hashman's argument.

{¶ 18} Second, Nelsonville seeks to introduce evidence to rebut an argument made by Hashman that Nelsonville's counsel is not authorized to represent Nelsonville in this matter. Nelsonville seeks to introduce rebuttal evidence related to the appointment of its counsel. We also allow this rebuttal evidence because it tends to disprove the premise of Hashman's argument.

{¶ 19} Third, Nelsonville seeks to introduce several audio recordings and other records related to board-of-elections proceedings that occurred on September 4. Approximately two weeks after Nelsonville filed its complaint in this matter, it filed a written protest against several write-in candidates with the board. The audio recordings and other proposed rebuttal evidence appear to be records related to the September 4 hearing the board held on this protest. Nelsonville did not amend or supplement its complaint to account for the protest, and although its brief refers to the protest, it makes no specific arguments about the protest. Neither the board's brief nor Hashman's brief appears to make any arguments about the protests, and neither the board nor Hashman introduced evidence related to the protests. Because the evidence related to the September 4 board-of-elections hearing does not rebut

evidence introduced by the board or Hashman, we deny the motion as to these exhibits.

## C. Laches

{¶ 20} Intervenor Hashman argues that Nelsonville's claim is barred by laches. We disagree.

{¶ 21} "'Extreme diligence and promptness are required in elections-related matters.'" *State ex rel. Clark v. Twinsburg*, 2022-Ohio-3089, ¶ 11, quoting *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 2002-Ohio-5302, ¶ 16. "Laches will bar an action when there is (1) an unreasonable delay or lapse of time in asserting a right, (2) the absence of an excuse for the delay, (3) actual or constructive knowledge of the injury or wrong, and (4) prejudice to the opposing party." *Id.*

{¶ 22} Nelsonville's city council passed Ordinance 54-25 on August 11, 2025. On August 13, the board declined to take action regarding the ordinance, and later that day, Nelsonville filed this extraordinary writ action. Hashman does not argue that the short time-period between these events would give rise to laches. Rather, she argues that Nelsonville's city council could have adopted a similar ordinance much earlier in the year. She argues that because of the city council's failure to pass Ordinance 54-25 earlier, she has been prejudiced by having to campaign for an office that Nelsonville now claims has been eliminated by the ordinance. She also points out that if elections for city-charter offices are to occur, the date for filing nominating petitions for such offices was August 6. Because that date passed before Nelsonville adopted Ordinance 54-25, she might be unable to run for an office under the city charter.

{¶ 23} Even if Hashman has been prejudiced by the timing of Nelsonville's adoption of Ordinance 54-25, the right that Nelsonville asserts in this case— cancellation of the elections for statutory offices pursuant to Ordinance 54-25—did not arise until city council adopted the ordinance. Before the ordinance passed,

Nelsonville could not have brought this case, because the city charter was still scheduled to be abolished and replaced with a statutory form of government. As discussed below, the timing of city council's adoption of the ordinance might be relevant to whether Nelsonville can show a clear legal right to its requested relief, but because Nelsonville brought this action two days after the ordinance passed and the asserted right to cancel the races for the statutory offices arose, it did not unduly delay in asserting the right.

### D. Prohibition

{¶ 24} Nelsonville seeks a writ of mandamus, or alternatively, a writ of prohibition, ordering the board of elections to "decertify, or otherwise remove," the slate of statutory offices set to appear on the November 2025 ballot. Although Nelsonville seeks a writ of prohibition as an alternative remedy, for ease of analysis, we address the prohibition request first.

{¶ 25} To obtain a writ of prohibition, Nelsonville must show that (1) the board is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) Nelsonville lacks an adequate remedy in the ordinary course of the law. *State ex rel. Save Your Courthouse Commt. v. Medina*, 2019-Ohio-3737, ¶ 23. Quasi-judicial authority refers to the "power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 1999-Ohio-17, ¶ 7. "A board of elections exercises quasi-judicial power when it 'conducts a protest hearing pursuant to statute.'" *State ex rel. Keith v. Lawrence Cty. Bd. of Elections*, 2019-Ohio-4766, ¶ 6, quoting *Medina* at ¶ 29; *see also State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 2022-Ohio-3138, ¶ 15 ("A board of elections exercises quasi-judicial authority when it decides a protest after a mandatory hearing that includes sworn testimony"). A writ of prohibition is thus appropriate to order a board of elections to remove a candidate or issue from the ballot when the relator's case arises from a required quasi-judicial protest hearing

the board held on the candidate or issue. *See Moscow* at ¶ 8, 15, 23 (granting a writ of prohibition preventing an issue from appearing on the ballot after the board of elections held a protest hearing); *State ex rel. Elmore v. Franklin Cty. Bd. of Elections*, 2025-Ohio-2585, ¶ 3-4, 35 (granting a writ of prohibition preventing a candidate from appearing on the ballot after the board of elections held a protest hearing).

{¶ 26} However, "extraordinary relief in prohibition is not available when there is no statute or other law requiring a board of elections to conduct a quasi-judicial hearing on a protest." *State ex rel. Fritz v. Trumbull Cty. Bd of Elections*, 2021-Ohio-1828, ¶ 10; *see also State ex rel. King v. Cuyahoga Cty. Bd. of Elections*, 2023-Ohio-3668, ¶ 18. Here, Nelsonville did not file a protest with the board before filing its complaint. Nor does any statute appear to require such a protest hearing. Protests under R.C. 3501.39 or R.C. 3513.05 are inapplicable because Nelsonville does not challenge the qualifications of specific petitions or candidacies; instead, it challenges the holding of elections for an entire set of offices. *See State ex. rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 1995-Ohio-184, ¶ 12 (holding, in a case in which the city argued that certain city-council elections were not authorized by its charter, that "a written protest under R.C. 3501.39 and/or 3513.05 would be inapplicable, since relators' objection [was] not against the qualifications of particular candidates, but instead assail[ed] the entire 1995 city council election"); *Fritz* at ¶ 10 (holding that R.C. 3501.39(A), which authorizes hearings on protests against petitions or candidacies, did not apply to a challenge to a city-council vote setting a recall election). Because the board was not required to hold a protest hearing in this matter, it did not exercise quasi-judicial authority, and thus Nelsonville cannot obtain a writ of prohibition.

{¶ 27} Two weeks after Nelsonville filed its complaint in this extraordinary writ action, it filed a written protest with the board against several write-in candidates for statutory offices. Nelsonville did not move to amend or supplement

its complaint to account for this postcomplaint event. *See* Civ.R. 15. Additionally, the relief Nelsonville seeks is the removal of all statutory offices from the ballot, not just the specific candidates it protested. We deny Nelsonville's request for a writ of prohibition.

### E. Mandamus

**{¶ 28}** To obtain a writ of mandamus, Nelsonville must establish, by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *Clark*, 2022-Ohio-3089, at ¶ 16. Nelsonville lacks an adequate remedy in the ordinary course of the law because the election is approximately two months away. *See id.*

**{¶ 29}** As to the remaining elements, we must determine whether the board has engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions by refusing to remove the statutory offices from the ballot. *State ex rel. New Carlisle v. Clark Cty. Bd. of Elections*, 2025-Ohio-814, ¶ 11. Nelsonville has not alleged fraud or corruption here. Therefore, the relevant inquiry is whether the board abused its discretion or clearly disregarded applicable law by refusing to remove the statutory offices from the ballot.

**{¶ 30}** The majority of Nelsonville's brief focuses on whether Nelsonville's city council has the authority to repeal Issue 23. But we do not need to address that question because Nelsonville's request for relief fails for a more basic reason: Mandamus enforces clear duties imposed by a legislative authority, *see State ex rel. Ullmann v. Hayes*, 2004-Ohio-5469, ¶ 11, and Nelsonville points to no statutory duty requiring, or even authorizing, a board of elections to remove elections for statutory offices with certified candidates from the ballot.

**{¶ 31}** The deadline for partisan candidates to file declarations of candidacy was February 5, 2025, and shortly after that deadline passed, the board certified qualifying partisan candidates to the ballot. Other deadlines have followed since,

and the board has been preparing for the November 2025 election in the meantime. Now, over six months after the first certification deadline, after the primary-election date has passed, and less than three months before the election, Nelsonville seeks to cancel elections for approximately 12 races.

{¶ 32} Generally, a board of elections has a duty to conduct an election that a municipality has the power to authorize. *See State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections*, 62 Ohio St.3d 17, 18 (1991). But Nelsonville does not point to any statute or legal precedent, that requires a board of elections to cancel an election at the direction of a municipality. Nelsonville does point to R.C. 3501.11(K)(1), which requires a board of elections to "[r]eview, examine, and certify the sufficiency and validity of petitions and nomination papers." "There are two circumstances under which a board of elections may declare a candidate's petition invalid: in response to a written protest (R.C. 3501.39(A)(1) and (2)) or sua sponte (R.C. 3501.39(A)(4))." *State ex rel. Bender v. Franklin Cty. Bd. of Elections*, 2019-Ohio-2854, ¶ 8. But if a protest challenges the holding of elections for entire races, rather than the placement of a particular candidate on the ballot, a protest under R.C. 3501.39 is inapplicable. *See Youngstown*, 1995-Ohio-184, at ¶ 12.

{¶ 33} A board of elections may sua sponte declare a candidate's petition invalid if "[t]he candidate's candidacy or the petition violates the requirements of [R.C. Ch. 3501, R.C. Ch. 3513], or any other requirements established by law." R.C. 3501.39(A)(4); *see also Bender* at ¶ 8. But, subject to certain exceptions not applicable here, "a board of elections shall not invalidate any declaration of candidacy or nominating petition under division (A)(4) of this section after the sixtieth day prior to the election at which the candidate seeks nomination to office, if the candidate filed a declaration of candidacy, or election to office, if the candidate filed a nominating petition." R.C. 3501.39(B). Thus, "[t]o invalidate a petition sua sponte, a board must act on or prior to the 60th day before the primary

election—even if no primary is required." *Bender* at ¶ 8. Here, the primary-election date has long since passed, and the board cannot invalidate the partisan candidates who filed declarations of candidacy in February. Moreover, similar to *Youngstown*'s holding on written protests, 1995-Ohio-184 at ¶ 12, Nelsonville's argument is not really "against the qualifications of particular candidates, but instead assails" an entire set of races.

{¶ 34} Nelsonville also points to two cases in which we granted mandamus relief ordering the removal of issues or elections from the ballot. In *State ex rel. Cornerstone Developers, Ltd. v. Greene Cty. Bd of Elections*, 2016-Ohio-313, ¶ 27, we ordered a board of elections to remove a tax levy from the ballot. In *Fritz*, 2021-Ohio-1828, at ¶ 21, we ordered the removal of a recall election from the ballot. Those cases, however, involved situations where the authorizations certifying the tax-levy issue to the ballot and setting the recall election, respectively, did not comply with statutory or charter requirements. *See Cornerstone* at ¶ 3, 16-17; *Fritz* at ¶ 16-18. The situations in those cases are not similar to the situation here. Here, Nelsonville does not dispute that the board initially properly placed the slate of statutory offices on the ballot, but Nelsonville now seeks to remove those races from the ballot based on a later event: the passage of Ordinance 54-25 and its purported abolishment of Issue 23.

{¶ 35} "It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus." (Cleaned up.) *Ullmann*, 2004-Ohio-5469, at ¶ 11. Here, Nelsonville does not point to a statute or legal precedent requiring, or even authorizing, a board of elections to remove races from the ballot when some of the candidates for those races were certified to the ballot over six months earlier. As the board aptly writes, "[w]hat [Nelsonville] asks is so unique that it is not only something that seems to be a matter of first impression before the Court, but it does

not appear to be something the State Legislature contemplated when creating statutory duties for the board." The board is correct, and we may not create that duty.

**{¶ 36}** Nelsonville has not shown a clear legal right to its requested relief or a clear legal duty on the part of the board to provide it. Because it has not done so, we do not need to address the parties' remaining arguments. We deny Nelsonville's request for a writ of mandamus.

### III. CONCLUSION

**{¶ 37}** Nelsonville seeks a writ of mandamus ordering the board of elections to remove elections for a slate of statutory offices from the ballot. Nelsonville points to no authority requiring the board to do so. Thus, it has not shown a clear legal right to its requested relief in mandamus or a clear legal duty on the part of the board to provide it. In addition, Nelsonville seeks a writ of prohibition. But because the board did not conduct, and was not required by statute to conduct, a protest hearing, it did not exercise quasi-judicial authority. Therefore, we deny the writs. In addition, for the reasons explained above, we grant Nelsonville's motion for leave to file an amended affidavit and grant in part and deny in part Nelsonville's motion for leave to file rebuttal evidence.

Writs denied.

_____

Reminger Co., L.P.A., Thomas N. Spyker, and Mrinali Sethi, for relators.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Timothy L. Warren, Assistant Prosecuting Attorney, for respondent.

Daniel H. Klos for intervening respondent.

_____