[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Strbich v. Montgomery Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-4933.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4933

THE STATE EX REL. STRBICH *v*. MONTGOMERY COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Strbich v. Montgomery Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-4933.]

*Elections—Mandamus—Writ sought to compel county board of elections to provide proper training to precinct election officials regarding use of unacceptable forms of photo identification—Board failed to comply with its clear legal duty to provide training in accordance with secretary of state's directive—While board updated its training materials to comply with secretary's directive, affected classes of individuals did not receive the updated training—Board may comply with writ by emailing updated training materials to affected classes of individuals—Writ granted in part and denied as moot in part.*

(No. 2024-1372—Submitted October 9, 2024—Decided October 11, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, BRUNNER, and DETERS, JJ. STEWART, J., concurred in part and dissented in part and would deny the writ in its entirety.

**Per Curiam.**

**{¶ 1}** This is an expedited election case brought by relator, Marcell Strbich, against respondents the Montgomery County Board of Elections and board members Rhine L. McLin, Barbara P. Gorman, Erick R. Blaine, and Thomas A. Routsong (collectively, "the board"). Strbich claims that the board has failed to provide proper training to precinct election officials regarding the use of unacceptable forms of photo identification for the purpose of voting, including the use of photo identification issued to noncitizens. Strbich seeks a writ of mandamus ordering the board to provide precinct election officials with proper training on this issue in accordance with R.C. 3501.11(P) and Directive 2024-09 issued by Secretary of State Frank LaRose. We grant the writ in part and deny it in part as moot.

## I. BACKGROUND

**{¶ 2}** Ohio law empowers the secretary of state to "[i]ssue instructions by directives . . . to members of the boards [of elections] as to the proper methods of conducting elections." R.C. 3501.05(B). In turn, each board of elections "shall establish a program as prescribed by the secretary of state for the instruction of election officers in the rules, procedures, and law relating to elections. In each program, the board shall use training materials prepared by the secretary of state and may use additional materials prepared by or on behalf of the board." R.C. 3501.27(B); *see also* R.C. 3501.11(P) (a board of elections shall "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state").

**{¶ 3}** A "precinct election official" is an "election officer" within a precinct. R.C. 3501.22(A)(1). All precinct election officials must complete a program of instruction in accordance with R.C. 3501.27(B). R.C. 3501.27(A). New election officers must complete the program of instruction before participating in an election as an election officer, and election officers who have previously received training must complete the program of instruction when the secretary deems it necessary. R.C. 3501.27(B). The duties of a precinct election official include "receiving the ballots and supplies, opening and closing the polls, and overseeing the casting of ballots during the time the polls are open." R.C. 3501.22(A)(1). A board of elections generally must "designate one of the precinct election officials who is a member of the dominant political party to serve as a voting location manager, whose duty it is to deliver the returns of the election and all supplies to the office of the board." *Id.*

**{¶ 4}** On June 21, 2024, the secretary issued Directive 2024-09 to all board members, directors, and deputy directors of the county boards of elections. The secretary titled the directive "Election Administration Readiness and Preparedness for the November 5, 2024, General Election." The directive touches on several topics, but the one at issue here directs designated officials with the boards of elections to provide training to "all" precinct election officials, even if they have previously received training, with respect to the following:

- How to verify a voter's identity with the photo ID card provided by the voter.
- How to ensure that only legally permissible forms of photo ID are accepted and that [precinct election officials] are trained on unacceptable forms of photo ID, including photo IDs issued to non-citizens. Ohio BMV issued photo IDs now contain a non-citizen notation on the back of the photo ID and license.

{¶ 5} In addition to Directive 2024-09, the secretary has adopted a precinct-election-official training manual that contains examples of unacceptable forms of identification, one of which is the "State of Ohio noncitizen identification, also known as a Non Renewable/Non Transferable credential."

{¶ 6} On September 25, Strbich, attended one of the precinct-election-official training sessions conducted by the board. Strbich attests that he questioned the presenter at the training about the lack of instruction addressing unacceptable forms of photo identification, including the use of photo identification issued to noncitizens. According to Strbich, the presenter told him that the instruction materials related to the photo-identification issue were not "on hand" and that because verification of a noncitizen's identity is conducted earlier in the registration process, there was no need to cover the issue.

{¶ 7} Strbich's evidence also includes affidavits from Mary McGirr and Jaclynn Shook, both of whom are voting-location managers. McGirr attests that she attended the board's training on September 20 and did not receive training addressing the use of unacceptable forms of photo identification, including the use of photo identification issued to noncitizens. Shook attests that she attended the board's training on September 27 and did not receive training on this issue either.

{¶ 8} Jeff Rezabek, the board's director, attests that about two hours after Strbich left the training session, Rezabek began receiving text messages from individuals claiming that the board was not properly training its precinct election officials. Within hours of receiving these messages, and to address the concerns raised in the messages Rezabek had received, the board added additional slides to its training materials to meet the requirements of Directive 2024-09 and added talking points for its trainers. According to Rezabek, beginning on the evening of September 25, the board began to train precinct election officials with these amended materials, addressing the use of acceptable and unacceptable forms of

photo identification, including the use of photo identification issued to noncitizens. Beginning September 29, the board began to train voting-location managers with these amended materials. The evidence thus establishes that before the evening of September 25 (for precinct election officials generally) and before September 29 (for precinct election officials designated as voting-location managers), the board was not providing training as required by the secretary's directive regarding the use of unacceptable forms of photo identification.

{¶ 9} Rezabek attests that an email containing the updated training materials "will" be sent to all precinct election officials who attended the board's training before the evening of September 25 and that Strbich, McGirr, and Shook will be included within the distribution. Rezabek further attests that "just before Election Day," the board will provide a final training session to its "Polling Location Supervisors," which will include photo-identification training in accordance with the secretary's directive.

{¶ 10} On September 30, Strbich brought this original action against the board seeking a writ of mandamus ordering the board to comply with its legal duty under R.C. 3501.11(P) to provide training in accordance with Directive 2024-09 "for all of its precinct election officials" regarding the use of unacceptable forms of photo identification, including the use of photo identification issued to noncitizens. We sua sponte expedited the case, directing the parties to file evidence and briefs on a more expedited schedule than that required by S.Ct.Prac.R. 12.08(A). *See* 2024-Ohio-4763. The case is ripe for decision.

## II. ANALYSIS

{¶ 11} To be entitled to a writ of mandamus, Strbich must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) the board has a clear legal duty to provide it, and (3) he does not have an adequate remedy in the ordinary course of the law. *State ex rel. Linnabary v. Husted*, 2014-Ohio-1417, ¶ 13. Strbich lacks an adequate remedy in the ordinary

course of the law because of the proximity of the election and therefore meets the third element. *State ex rel. LaChapelle v. Harkey*, 2023-Ohio-2723, ¶ 8. An analysis under the first two elements requires us to determine "whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable law." *State ex rel. Brubaker v. Lawrence Cty. Bd. of Elections*, 2022-Ohio-1087, ¶ 10. The crux of Strbich's argument in this case is that the board clearly disregarded applicable law by failing to provide precinct election officials with proper training regarding the use of unacceptable forms of photo identification.

### A. Clear legal duty

**{¶ 12}** Strbich argues that the board has a clear legal duty to provide training to precinct election officials in accordance with Directive 2024-09. Strbich invokes the precept that the "board of elections and its members have a duty to follow the secretary of state's directives," *State ex rel. Waters v. Spaeth*, 2012-Ohio-69, ¶ 16. And as we have already observed, R.C. 3501.11(P) requires the board to "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state." In this case, however, the board does not contest that the law imposes a duty on it to provide training in accordance with the secretary's directive. This element of the mandamus standard is thus easily met.

### B. Clear legal right

**{¶ 13}** Strbich next argues that he and other precinct election officials have a clear legal right to receive training on the secretary's directive pertaining to the use of unacceptable forms of photo identification. The board does not disagree with this proposition in the abstract, nor does it dispute that Strbich may seek the writ on behalf of himself and other affected precinct election officials, including officials who are voting-location managers, such as McGirr and Shook. Instead, the board argues that the case is moot because it has provided training on unacceptable forms of photo identification in accordance with the secretary's

6

directive. It further argues that it will be sending an email to all precinct election officials that contains the updated training materials. Last, it argues that it will provide a training session to polling-location supervisors before the election that will include the training on unacceptable forms of photo identification required under the secretary's directive.

{¶ 14} It is the function of this court "'to decide actual controversies' and withhold advice upon moot questions." *State ex rel. Grendell v. Geauga Cty. Bd. of Commrs.*, 2022-Ohio-2833, ¶ 9, quoting *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970). "When an actual controversy ceases to exist, 'this court must dismiss the case as moot.' " *Id.*, quoting *M.R. v. Niesen*, 2022-Ohio-1130, ¶ 7. When a respondent in a mandamus case performs the requested act, the case is moot. *State ex rel. Carlton v. Heekin*, 2021-Ohio-2822, ¶ 3.

{¶ 15} In this case, Strbich seeks a writ requiring the board to conduct training for precinct election officials in accordance with Directive 2024-09. The evidence establishes that beginning on the evening of September 25 for precinct election officials generally and beginning on September 29 for precinct election officials who are voting-location managers, the board began providing training as required by the directive. Thus, beginning on and after the evening of September 25, the writ action is moot for precinct election officials generally. So too, beginning on and after September 29, the writ action is moot for precinct election officials who are voting-location managers.

{¶ 16} But the evidence also establishes that before the evening of September 25, the board had not fulfilled its duty as set out in Directive 2024-09 to provide training to precinct election officials generally, including Strbich. Therefore, for this class of affected individuals, the writ action is not moot. Likewise, the evidence establishes that before September 29, the board had not fulfilled its duty under the directive to provide training to precinct election officials

who are voting-location managers, including McGirr and Shook. The writ action is accordingly not moot for this class of individuals either.

{¶ 17} The board's promise that it will send emails to all precinct election officials with updated training materials does not render the action moot for the above-mentioned individuals, because the evidence does not show that any emails have been sent. And the board's statement that it will provide a final training to *polling-location supervisors* does not cure its failure to perform its duty, because the evidence does not establish that any of the affected individuals in this case are polling-location supervisors. Indeed, Rezabek does not elaborate on whom the term "polling-location supervisors" includes, and that term is not defined in Title 35 of the Revised Code, which governs Ohio's election procedures.

### C. Scope of the writ

{¶ 18} The analysis in the preceding section establishes that it is appropriate in this case to grant in part a writ of mandamus. To this end, we order the board to provide training, consistent with Directive 2024-09, to the class of (1) precinct election officials generally who attended the board's training before the evening of September 25 and (2) precinct election officials consisting of voting-location managers who attended the board's training before September 29. The board may comply with the writ by sending an email to all affected individuals that contains the updated training materials consistent with Directive 2024-09.

{¶ 19} We recognize that the board states that it will send these emails in the future; however, so far, it has not done so. To ensure that the board complies with its clear legal duty to provide training in accordance with the secretary's directive—training that two distinct classes of affected individuals have yet to receive—we issue the writ.

{¶ 20} Strbich argues that emailing the training materials will not be sufficient to satisfy the board's duty, arguing that only in-person training will do because there is a risk that some individuals may not read their email. But Strbich

8

points to no authority requiring in-person training. And just as it can be imagined that some individuals may not read their email, it can similarly be imagined that some individuals may not pay attention to further in-person training even if we were to require it.

## III. CONCLUSION

**{¶ 21}** The writ is denied in part as moot for (1) precinct election officials generally who attended the board's training on or after the evening of September 25 and (2) precinct election officials consisting of voting-location managers who attended the board's training on or after September 29. We grant a writ of mandamus in part ordering that the board provide training in accordance with the secretary's directive to (1) precinct election officials generally who attended the board's training before the evening of September 25 and (2) precinct election officials consisting of voting-location managers who attended the board's training before September 29. The board may comply with the writ by sending an email that contains the updated training materials to the affected classes of individuals.

Writ granted in part

and denied as moot in part.

—————————

The Law Firm of Curt C. Hartman and Curt C. Hartman, for relator.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Nathaniel S. Peterson, Assistant Prosecuting Attorney, for respondents.

—————————