[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hicks v. Clermont Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-993.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-993

THE STATE EX REL. HICKS *v.* CLERMONT COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hicks v. Clermont Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-993.]**

*Elections—Mandamus—Writ sought to compel board of elections to hold hearing under R.C. 3513.05—Relator failed to establish a clear legal right to a mandatory hearing or board's corresponding clear legal duty to hold such a hearing because his request did not constitute a valid protest under R.C. 3513.05—A hearing on relator's request would be in vain as it would not result in candidate's removal from primary-election ballot—Writ denied.*

(No. 2026-0231—Submitted March 11, 2026—Decided March 24, 2026.)

IN MANDAMUS.

————————

HAWKINS, J., authored the opinion of the court, which DEWINE, DETERS, and SHANAHAN, JJ., joined.  KENNEDY, C.J., concurred in judgment only, with an

opinion joined by FISCHER, J. BRUNNER, J., concurred in part and dissented in part, with an opinion.

**HAWKINS, J.**

{¶ 1} Relator, Christopher R. Hicks, timely submitted to the Clermont County Board of Elections a written request objecting to the nominating petition of Claire Corcoran, who seeks to run in the upcoming primary election as a Republican candidate for the office of Clermont County Commissioner. Hicks's request alleged that one of the part-petitions filed in support of Corcoran's declaration of candidacy contained elector signatures that were not properly witnessed by the circulator of that part-petition.

{¶ 2} Upon receiving Hicks's request, the board declined to schedule or conduct a protest hearing. Instead, at a "special meeting," the board concluded that Hicks's submission failed to meet the requirements of R.C. 3501.39 and 3513.05 and therefore did not constitute a "valid protest"; thus, the board reasoned, no hearing was required. This conclusion rested primarily on the board's determination that even if it ultimately invalidated all the elector signatures on the single part-petition to which Hicks objected, Corcoran would still have had more than the 50 valid signatures required by law and would therefore remain on the primary-election ballot.

{¶ 3} Soon after receiving notice of the board's determination, Hicks filed this action seeking a writ of mandamus compelling respondents—the board; its director, Stephanie Haight; its deputy director, Chris Dennison; its chair, Raymond W. Lembke; and its individual members, Gregg Conrad, Larry Heller, and Tim Rudd (collectively, "the board")—to schedule and conduct a protest hearing as provided in R.C. 3513.05. The board answered, and the parties submitted briefs and evidence in accordance with S.Ct.Prac.R. 12.08. In its merit brief, the board seeks sanctions against Hicks under S.Ct.Prac.R. 4.03(A). After its time for filing

evidence had expired, the board filed a motion for leave to file amended evidence, which Hicks did not oppose.

{¶ 4} The arguments and evidence in this case establish that Hicks's request for a hearing under R.C. 3513.05 was based on allegations that ultimately have no bearing on Corcoran's candidacy. In these circumstances, we conclude that (1) Hicks failed to establish a clear legal right to a mandatory hearing in accordance with R.C. 3513.05 or the board's corresponding clear legal duty to hold that hearing because Hicks's request did not constitute a protest against Corcocan's candidacy and (2) a hearing on Hicks's request would be in vain as it would not result in Corcoran's removal from the primary-election ballot. On these grounds, we deny Hicks's request for a writ of mandamus. We also deny the board's request for sanctions against Hicks and grant the board's motion for leave to file amended evidence.

## I. FACTS AND PROCEDURAL HISTORY

### A. Hicks's request and the board's response

{¶ 5} Claire Corcoran seeks to run in the May 5, 2026 primary election as a Republican candidate for the office of Clermont County Commissioner. Hicks contends that on October 15, 2025, he observed a part-petition in support of Corcoran's declaration of candidacy being signed without the circulator present to witness the affixing of signatures. At that time, Hicks signed and took a photograph of the part-petition.

{¶ 6} The part-petition in question was circulated by Corcoran's husband, T. Jeffrey Corcoran, who had signed the circulator statement. That statement requires the circulator to "declare under penalty of election falsification" that, among other things, the circulator "witnessed the affixing of every signature," that all signers are "to the best of [the circulator's] knowledge and belief qualified to sign," and that every signature is "to the best of [the circulator's] knowledge and

belief the signature of the person whose signature it purports to be," R.C. 3513.07 (prescribing the form of a declaration of candidacy and petition).

{¶ 7} On February 20, 2026, Hicks emailed and faxed a document styled "Protest of the Part Petitions of Claire Corcoran" to Haight and Dennison. Haight acknowledged receipt of Hicks's request in an email she sent Hicks on the same day.

{¶ 8} On the first page of his request, Hicks cited R.C. 3501.38, 3501.39, and 3513.05, indicated that he is a member of the Republican Party, and stated that "[t]his is a written protest to the part petitions of Claire Corcoran as filed on February 3, 2026, seeking the office of Commissioner, January 1, 2027, term." The request also stated, in relevant part:

> I personally witnessed a part petition page being circulated and signed, on October 15, 2025, with no witness to any of the signatures being affixed. I took pictures at the time to document the lack of any witness. Here is one: [photograph of part-petition]
>
> Others who witnessed the events can testify to the lack of any witnesses to the signatures. I signed that petition page to make it self-authenticating.
>
> That page was submitted with T. Jeffrey Corcoran having signed the circulator statement, under penalty of election falsification: [screenshot of circulator statement]
>
> There may be issues beyond that page.

{¶ 9} Haight avers in an affidavit that upon receipt of the request, she forwarded it to the other members of the board "to determine whether the Purported Protest met the requirements of R.C. 3513.05 and 3501.39 such that a hearing would be required." The board called a special meeting to review Hicks's request

4

and determine whether a protest hearing was required. The board emailed Hicks, notifying him when the special meeting would be held and attaching the agenda for the special meeting.

{¶ 10} At the February 24 special meeting, which Hicks did not attend, the board discussed Hicks's protest and Corcoran's request. During that discussion, the board reviewed Corcoran's petition as a whole and determined that, including those affixed to the part-petition to which Hicks had objected, Corcoran had gathered 86 otherwise valid signatures. The board determined that without the objected-to part-petition, which contained 17 signatures, Corcoran's petition contained 69 valid signatures—19 more than the 50 required by law.[1] *See* R.C. 3513.05 ("the petition shall be signed by not less than fifty qualified electors").

{¶ 11} The board concluded that, even if it accepted as true Hicks's allegations regarding the single part-petition referenced and consequently struck the affected signatures, the protest would have no effect on the validity of Corcoran's petition as a whole or her candidacy. The board also determined that Hicks's request did not specifically allege the invalidity of Corcoran's petition as a whole or her candidacy. Though one member queried whether the proper action was to "deny the protest," the board ultimately determined that Hicks's request was not a "proper" or "valid" protest. As a result, the board decided that because Hicks's request was "not a protest under [R.C.] 3513.05 at all," the board was not required to "deny" the request or hold a hearing. The board did, however, contemplate that "some investigation" might be warranted.

{¶ 12} Haight emailed Hicks on February 26 to advise him of the outcome of the special meeting, stating that Hicks's submission "did not meet the requirements of R.C. 3513.05 and 3501.39," because it did not identify which

---

1. At the special meeting, the board determined that the objected-to part-petition contained 18 signatures, when in fact it contained only 17; thus, absent those on the objected-to part-petition, Corcoran's petition contained 69 valid signatures rather than 68.

particular signatures Hicks was "questioning," it did not "actual[ly] claim that Mrs. Corcoran should not be placed on the ballot," and—even assuming the entire part-petition in question were declared invalid—Corcoran would still have enough valid signatures to appear on the ballot. Thus, his request "did not invoke a mandatory hearing."

## B. This mandamus action

**{¶ 13}** On February 27, Hicks brought this action seeking a writ of mandamus compelling the board to schedule and conduct a hearing on his request in accordance with R.C. 3513.05. On the same day, he filed a first amended complaint and a second amended complaint, seeking the same relief.

**{¶ 14}** The board timely answered on the same day, denying that Hicks's submission constituted a "written protest" under R.C. 3513.05 and 3501.39 and consequently determining that it was not obligated to schedule or conduct a hearing. Both parties filed briefs and submitted evidence. In its merit brief, the board seeks sanctions against Hicks under S.Ct.Prac.R. 4.03(A). The board separately filed a motion for leave to file amended evidence, which Hicks did not oppose.

## II. ANALYSIS

**{¶ 15}** To be entitled to a writ of mandamus, Hicks must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) the board has a clear legal duty to provide that relief, and (3) he does not have an adequate remedy in the ordinary course of the law. *State ex rel. Strbich v. Montgomery Cty. Bd. of Elections*, 2024-Ohio-4933, ¶ 11. Because the May 5, 2026 primary election is now less than two months away, Hicks lacks an adequate remedy in the ordinary course of the law and therefore meets the third element. *See, e.g., State ex rel. West v. LaRose*, 2020-Ohio-4380, ¶ 15 (relator lacked an adequate remedy in the ordinary course of the law when the election at issue was less than 60 days away).

{¶ 16} To determine whether Hicks has established a clear legal right and the board's corresponding clear legal duty, we must consider whether the board "engaged in fraud, corruption, or abuse of discretion or acted in clear disregard of applicable law," *State ex rel. Tjaden v. Geauga Cty. Bd. of Elections*, 2024-Ohio-3396, ¶ 23. A writ of mandamus is an "extraordinary remedy" that is granted "carefully and cautiously," *State ex rel. Fostoria Daily Rev. Co. v. Fostoria Hosp. Assn.*, 32 Ohio St.3d 327, 329 (1987), and only in "the sound discretion of the court" asked to issue it, *State ex rel. Allied Wheel Prods. v. Indus. Comm.*, 161 Ohio St. 555, 560 (1954).

**A. The board is not required to hold a protest hearing under R.C. 3501.39 and 3513.05 because the challenge could not affect Corcoran's candidacy**

{¶ 17} Hicks asserts that he is entitled to a hearing on his request under R.C. 3501.39(A) and 3513.05. R.C. 3501.39(A)(1) provides that a board of elections "shall accept" any petition described in R.C. 3501.38—i.e., any "declarations of candidacy, nominating petitions, or other petitions presented to . . . a board of elections . . . for the purpose of becoming a candidate for any nomination," R.C. 3501.38—unless a "written protest against the petition or candidacy, naming specific objections, is filed, a hearing is held, and a determination is made . . . that the petition is invalid, in accordance with any section of the Revised Code providing a protest procedure."

{¶ 18} Here, the applicable "protest procedure" that R.C. 3501.39(A)(1) refers to is laid out in the 13th paragraph of R.C. 3513.05, which governs "[p]rotests against the candidacy of any person filing a declaration of candidacy for party nomination or for election to an office or position." *See also State ex rel. Harbarger v. Cuyahoga Cty. Bd. of Elections*, 1996-Ohio-254, ¶ 6 ("R.C. 3513.05, relating to declarations of candidacy and petitions in primary elections, provides the applicable protest procedure here since [the protestor] protested [candidates'] petitions based on R.C. 3501.38(E). . . .").

{¶ 19} R.C. 3513.05 provides that such protests must be filed (1) in writing, (2) by a qualified elector who is eligible to vote in the primary election at issue and is of the same political party as the person whose candidacy is protested, (3) no later than 4:00 p.m. on the 74th day before the primary election at issue, and (4) with the election officials with whom the declaration of candidacy and petition was filed. Additionally, R.C. 3513.05 requires that when a valid protest is filed, a board of elections must "promptly fix the time for hearing it" and "forthwith" mail notice to the person whose candidacy is protested and to the protestor. *See also State ex rel. Yeager v. Richland Cty. Bd. of Elections*, 2013-Ohio-3862, ¶ 29. At that hearing, the board of elections must "hear the protest and determine the validity or invalidity of the declaration of candidacy and petition." R.C. 3513.05.

{¶ 20} There are two grounds for a determination of invalidity: first, if the election officials "find that such candidate is not an elector of the state, district, county, or political subdivision in which the candidate seeks a party nomination or election to an office or position," and second, if the election officials find that the candidate "has not fully complied with" R.C. Ch. 3513. R.C. 3513.05.

{¶ 21} Under this statutory scheme, the board did not exceed its authority by refusing to accept Hicks's submission as a protest mandating a hearing. The text of the relevant statutes show that a board is not obligated to hold a hearing on any request labeling itself a R.C. 3513.05 protest. Rather, the prerequisites to a protest stated in R.C. 3513.05 and the specificity requirement in R.C. 3501.38 indicate that a board must evaluate, as a threshold determination, whether a request purporting to be a protest under R.C. 3513.05 meets the applicable statutory standards to mandate a hearing.

{¶ 22} Relevant to this case, the only protest authorized by R.C. 3513.05 is a "[p]rotest[] against the candidacy of any person filing a declaration of candidacy for party nomination or for election to an office or position." (Emphasis added.) R.C. 3501.39 and 3513.05 do not require, let alone clearly require, a board of

elections to hold a hearing on the validity of a declaration of candidacy and petition when the allegations in the request submitted to the board, on their face, could never amount to legal grounds for rejecting the candidacy.

{¶ 23} That is the situation the board faced here. In an attempt to raise the question of compliance with R.C. 3501.38(E)(1) and R.C. 3501.38(F), which pertain to the statement and knowledge of the circulator, Hicks alleged that one part-petition had been signed by electors without the circulator's having witnessed all signatures. But the part-petition at issue concerned only 17 signatures. Corcoran's remaining part-petitions contained a total of 69 valid signatures, and she needed only 50 signatures to qualify for the primary-election ballot. See R.C. 3513.05 ("the petition shall be signed by not less than fifty qualified electors"). While Hicks vaguely suggests that "[t]here may be issues beyond that page," he does not argue—much less submit evidence showing—that holding a hearing could have resulted in Corcoran's removal from the ballot.

{¶ 24} Because the allegations in Hicks's request for a hearing could never amount to legal grounds for rejecting Corcoran's candidacy, the board correctly concluded that Hicks had not filed a protest under R.C. 3513.05 to mandate a hearing. Hicks has not, therefore, met the high bar of establishing a clear legal right and the board's corresponding clear legal duty to hold a mandatory hearing in accordance with R.C. 3513.05.

**B. Granting the requested writ of mandamus would compel a vain act**

{¶ 25} The futility of Hicks's submission also demands that we deny the requested writ because "'mandamus will not issue to compel a vain act,'" *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 2005-Ohio-5061, ¶ 17, quoting *State ex rel. Moore v. Malone*, 2002-Ohio-4821, ¶ 38.

{¶ 26} We have previously applied this precept to deny extraordinary relief in an election-related original action. *Oberlin Citizens* at ¶ 17. In *Oberlin Citizens*, a city auditor refused to transmit or certify the relators' initiative and referendum

petitions regarding a city ordinance to the county board of elections based on the auditor's determination that the subject ordinance was administrative rather than legal and therefore not subject to referendum. Relators requested a writ of mandamus compelling the auditor to submit the petitions to the board of elections. We denied the requested writ, determining that the ordinance at issue was administrative and therefore was not "properly the subject of either referendum or initiative seeking its repeal." *Id.* at ¶ 31. Thus, because the board of elections "would ultimately have been required to withhold the initiative and referendum from the ballot," granting the requested writ would have compelled only a vain act. *Id.* at ¶ 17.

{¶ 27} This case presents similar circumstances. As explained in the previous section, the sole purpose of the hearing that Hicks seeks is to determine the validity or invalidity of Corcoran's declaration of candidacy and petition—i.e., to determine whether Corcoran will appear on the May 5 primary-election ballot. *See* R.C. 3513.05 (addressing "[p]rotests against the candidacy of any person filing a declaration of candidacy"). And the evidence submitted in this case establishes that the board, faced with one allegedly invalid part-petition, would have had no choice but to determine that Corcoran's candidacy was valid because she had retained enough valid signatures on her petition to remain on the primary-election ballot regardless of Hicks's allegations.

{¶ 28} Based on the arguments and evidence submitted in this case, we conclude that granting the requested writ of mandamus would compel only a vain act, and we therefore decline to do so. *See Oberlin Citizens* at ¶ 7 ("we need not grant the requested writ of mandamus if the board of elections would ultimately have been required to withhold the initiative and referendum from the ballot").

### C. The board's request for sanctions against Hicks

{¶ 29} In its merit brief, the board requests sanctions against Hicks under S.Ct.Prac.R. 4.03(A), arguing that he filed the instant action "in an effort to harass

10

not only the Board and its staff and counsel, but also the candidate and her spouse." The board cites a video that Hicks posted on YouTube before he submitted the request for a protest hearing. In the video, Hicks posits that "[i]f this page is tossed, I believe she still has enough signatures, but if there's any uh problems emerge on any other page, which I'll study through, then she would be tossed from the ballot." The board also points to "ad hominem attacks and personal invective" contained in Hicks's mandamus complaint and merit brief.

{¶ 30} Under S.Ct.Prac.R. 4.03(A), we may sanction the person who signed or submitted a filing—including by awarding reasonable attorney fees and litigation expenses to the opposing party—if we determine that the filing "is frivolous or is prosecuted for delay, harassment, or any other improper purpose." A filing is frivolous if "it is not reasonably grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." *Id.*

{¶ 31} Though we decline to grant the writ Hicks requests, it cannot be said that his argument—that the board exceeded its authority in failing to schedule and hold a protest hearing—was "not reasonably grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law," *id.* Nor does the YouTube video cited by the board establish that Hicks filed this action for harassment. Although Hicks noted in the video that invalidation of the part-petition he had challenged likely would not result in Corcoran's removal from the ballot, he also stated that he planned to review the remaining part-petitions for any other "problems" that may have resulted in Corcoran's falling below the requisite number of signatures—though he ultimately failed to submit any evidence of, or argument regarding, other such "problems" to this court. Finally, while we condemn the type of personal attacks that Hicks included in his merit and reply briefs, the board does not identify any case in which we have invoked S.Ct.Prac.R. 4.03(A) to sanction a litigant solely for impugning

the character of an opposing party or its counsel, nor do we believe on the facts here that such a sanction would be justified.

{¶ 32} We therefore deny the board's request for sanctions.

### D. The board's motion for leave to file amended evidence

{¶ 33} On March 6, one day after its deadline to file evidence under S.Ct.Prac.R. 12.08(A)(2), the board filed a motion for leave to file amended evidence. The board's proposed amendments—namely, the correction of an internet link, the amendment of an affidavit to assert that it was made on personal knowledge, and the correction of a reference to a misnumbered exhibit—are minor and technical. Hicks did not file a response in opposition to the board's motion.

{¶ 34} S.Ct.Prac.R. 3.13(B)(3) allows a party to file a motion for leave to file a revised document when the time for submitting the original document has expired. The board properly requested leave to revise its previously filed evidence under this provision. Because Hicks did not file a response in opposition and because he will not suffer any prejudice, particularly given the technical and nonsubstantive nature of the proposed amendments, we grant the board's motion. *See State ex rel. Boddy v. Xenia Community City School Dist. Bd. of Edn.*, 2026-Ohio-164, ¶ 13, citing *State ex rel. Maxwell v. Brice*, 2021-Ohio-4333, ¶ 24.

### III. CONCLUSION

{¶ 35} For the foregoing reasons, we deny Hicks's request for a writ of mandamus, deny the board's request for sanctions, and grant the board's motion for leave to file amended evidence.

Writ denied.

————————————

**KENNEDY, C.J., joined by FISCHER, J., concurring in judgment only.**

{¶ 36} I agree with the court's judgment denying the Clermont County Board of Elections' request for sanctions against relator, Christopher R. Hicks, and granting the board's motion for leave to file amended evidence. I also agree with

the court's denial of Hicks's request for a writ of mandamus compelling respondents—the Clermont County Board of Elections; its director, Stephanie Haight; its deputy director, Chris Dennison; its chair, Raymond W. Lembke; and its individual members, Gregg Conrad, Larry Heller, and Tim Rudd (collectively, "the board")—to conduct a hearing on his protest.

{¶ 37} However, my reasoning differs from that of the majority. Establishing a clear legal right to the remedy requested is the first step in determining whether to award a writ of mandamus. If, as the majority suggests, Hicks's request for a hearing was invalid, then Hicks has no clear legal right to, and the board has no clear legal duty to hold, a hearing. *See* majority opinion, ¶ 4. Under the majority's conclusion, there is no need to go further and reach the question whether granting mandamus relief would compel only a vain act.

{¶ 38} But, in my view, the board, as a creature of statute, lacked discretion to disregard its statutory duty to hold a hearing on Hicks's protest based on its conclusion that a protest hearing under R.C. 3513.05 would not result in the removal of the objected-to candidate from the ballot. Because Hicks submitted a valid protest, the board was required to hold a hearing on it. Under these circumstances, a writ of mandamus would typically issue.

{¶ 39} Nonetheless, it is well established that a writ of mandamus will not issue to compel a vain act. *State ex rel. Grendell v. Geauga Cty. Bd. of Commrs.*, 2022-Ohio-2833, ¶ 9; *State ex rel. Rodriguez v. Indus. Comm.*, 1993-Ohio-89, ¶ 14. And although the board was required to hold a hearing on Hicks's protest, the result of that hearing is foreordained—the board has already determined that the candidate would have enough signatures to stay on the ballot even if Hicks proved the allegations in his protest. Consequently, issuing the writ of mandamus Hicks requests would compel a vain act. I therefore concur in the court's judgment denying the requested writ of mandamus.

**Background**

{¶ 40} In this case, Claire Corcoran seeks to run in the upcoming primary election as a Republican candidate for the office of Clermont County Commissioner. Hicks submitted to the board a written protest objecting to her nominating petition because, he says, one of the part-petitions filed in support of Corcoran's declaration of candidacy contained elector signatures that had not been properly witnessed by the circulator of that part-petition.

{¶ 41} The board, however, chose not to hold a protest hearing. Instead, at a "special meeting," the board concluded that Hicks's submission did not constitute a "valid protest" and no hearing was required. This conclusion rested primarily on the board's determination that even if it ultimately invalidated all the elector signatures on the part-petition Hicks objected to, Corcoran would still have had more than the 50 valid signatures required by law and would therefore remain on the primary-election ballot.

{¶ 42} Hicks filed this action requesting a writ of mandamus compelling the board to schedule and hold a protest hearing in accordance with R.C. 3513.05.

**The Standard for a Writ of Mandamus**

{¶ 43} To be entitled to a writ of mandamus, Hicks must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) the board has a clear legal duty to provide that relief, and (3) he does not have an adequate remedy in the ordinary course of the law. *State ex rel. Strbich v. Montgomery Cty. Bd. of Elections*, 2024-Ohio-4933, ¶ 11.

{¶ 44} I agree with the majority that Hicks lacks an adequate remedy in the ordinary course of the law. What I do not understand is why, upon determining that Hicks did not establish his clear legal right to, or the board's clear legal duty to provide, the requested relief, the majority did not stop its analysis there. There is no need to address whether the vain-act exception applies absent the

determinations—which I would make—that Hicks was entitled to a hearing and that the board failed to provide it.

**The Statutes Required a Protest Hearing**

{¶ 45} The board incorrectly determined that Hicks's protest failed to meet the requirements of R.C. 3501.39 and 3513.05. The 13th paragraph of R.C. 3513.05 governs "[p]rotests against the candidacy of any person filing a declaration of candidacy for party nomination or for election to an office or position." R.C. 3513.05 provides that such protests must be filed (1) in writing, (2) by a qualified elector who is eligible to vote in the primary election at issue and is of the same political party as the person whose candidacy is protested, (3) no later than 4:00 p.m. on the 74th day before the primary election at issue, and (4) with the election officials with whom the declaration of candidacy and petition was filed. Hicks's protest satisfied all four of these requirements.

{¶ 46} R.C. 3513.05 requires that when a valid protest is filed, the board of elections "shall promptly fix the time for hearing it" and "forthwith" mail notice to the person whose candidacy is protested and to the protestor. *At that hearing*, the board of elections must "hear the protest and determine the validity or invalidity of the declaration of candidacy and petition." *Id.*

{¶ 47} There are two grounds for a determination of invalidity: first, if the election officials "find that such candidate is not an elector of the state, district, county, or political subdivision in which the candidate seeks a party nomination or election to an office or position," and second, if the election officials find that the candidate "has not fully complied with" R.C. Ch. 3513. R.C. 3513.05.

{¶ 48} Hicks alleged in his protest that one of Corcoran's part-petitions contained signatures of electors that had not been witnessed by the circulator—an allegation that involves a failure to comply with (1) R.C. 3501.38(E)(1)'s requirement that the circulator sign "a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature" and (2)

R.C. 3501.38(F)'s provision that a petition paper is invalid "if a circulator knowingly permits an unqualified person to sign . . . or permits a person to write a name other than the person's own." This allegation raised the issue whether the petition "complied with [R.C. Ch. 3513]," R.C. 3513.05. Hicks's protest met the requirements of R.C. 3501.39 and 3513.05.

{¶ 49} Upon receiving a written protest meeting the requirements of R.C. 3501.39 and 3513.05, R.C. 3513.05 requires that the board (1) "promptly fix the time for hearing" the protest, (2) "mail notice of the filing of the protest and the time fixed for [the] hearing" to the candidate and the protestor, and (3) at the time so fixed, "hear the protest and determine the validity or invalidity of the declaration of candidacy and petition," R.C. 3513.05. Because this hearing is mandatory when a written protest which meets the requirements of R.C 3501.39 and 3513.05 is received by the board, Hicks has a clear legal right to it.

{¶ 50} But instead of scheduling and conducting a hearing on Hicks's protest, the board held a "special meeting" at which it reviewed his protest and Corcoran's petition and determined that Hicks's protest could not result in the invalidation of Corcoran's petition for candidacy. The board contends that because Corcoran had enough valid signatures even without those on the part-petition to which Hicks objected, Hicks's protest was not a "valid protest" necessitating a hearing.

{¶ 51} A board of elections is "a creature of statute." *State ex rel. Lynch v. Chesney*, 113 Ohio App. 55, 58 (7th Dist. 1960). It has no discretion to disregard a statutory mandate; as we have explained, a creature of statute "has no authority to act beyond its statutory powers," *Discount Cellular, Inc. v. Pub. Util. Comm.*, 2007-Ohio-53, ¶ 51. And a creature of statute "must comply with the clear provisions of the [a]ct that define its powers and duties," *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.*, 69 Ohio St.3d 521, 526 (1994).

16

{¶ 52} Here, the board's determination of the validity or invalidity of Corcoran's petition for candidacy was to happen at the required hearing, not before. This statutory duty means the board has a clear legal duty to provide the relief Hicks requests in this action.

{¶ 53} However, determining that Hicks had a clear legal right to, and that the board had a clear legal duty to hold, a hearing does not end the analysis.

**Mandamus Will Not Issue to Compel a Vain Act**

{¶ 54} A writ of mandamus is "a high prerogative writ, and its issuance rests in the sound discretion of the court." *Patton v. Springfield Bd. of Edn.*, 40 Ohio St.3d 14, 15 (1988). "'The court is not bound to allow the writ merely because [the] applicant shows a clear legal right for which mandamus would be an appropriate remedy, even though without mandamus [the] applicant for the writ would be without remedy. The writ will not be issued on mere technical grounds, and it may be granted or refused depending on whether or not it promotes substantial justice.'" *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967), quoting 55 C.J.S., Mandamus, § 9b, at 31-32 (1948). In exercising our discretion, we consider, among other things, "'whether the performance of the act by the respondent would give the relator any effective relief, and whether such act would be . . . useless.'" *Id.* at 162, quoting 35 Ohio Jur.2d, Mandamus, § 37, at 287 (1959).

{¶ 55} We have therefore recognized that "[m]andamus will not issue to compel a vain act." *State ex rel. Burkons v. Beachwood*, 2022-Ohio-748, ¶ 14. And we have denied extraordinary relief in an expedited election action despite the respondent's failure to comply with a statutory duty when the result would be to compel the respondent to engage in a vain act. *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 2005-Ohio-5061, ¶ 17.

{¶ 56} Hicks wants a hearing to challenge the validity of Corcoran's declaration of candidacy and petition. However, the record establishes that the board could conclude only that Corcoran's candidacy was valid because she had

enough signatures on her petition to remain on the primary-election ballot regardless of Hicks's allegations.

{¶ 57} Hicks's protest attacked one part-petition circulated by T. Jeffrey Corcoran that Hicks says had been signed by electors without the circulator's witnessing all signatures. That part-petition contained 17 signatures. Even assuming that Hicks is right that the entire part-petition should be invalidated, Corcoran's remaining part-petitions contained a total of 69 valid signatures and she needed only 50 signatures to qualify for the primary-election ballot. *See* R.C. 3513.05 ("the petition shall be signed by not less than fifty qualified electors").

{¶ 58} Consequently, granting the requested writ of mandamus would compel only a vain act, and I would not order the Clermont County Board of Elections to do that. Therefore, I concur in the court's judgment denying a writ of mandamus in this case.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 59} I agree with the opinion concurring in judgment only that relator, Christopher R. Hicks, has established a clear legal right to a protest hearing and that the respondent Clermont County Board of Elections had a clear legal duty to hold one; I dissent, however, from the court's judgment denying Hicks's request for a writ of mandamus. Neither a board of elections nor this court should adjudicate the validity of an election protest unless a hearing is first held. Here, while the Clermont County Board of Elections held a meeting *about the fact* that a protest had been filed, that meeting was not a hearing *on the protest*, as it did not allow Hicks the opportunity to present evidence and argument before the board.

{¶ 60} Boards of elections have no procedure allowing them to dismiss a protest for failure to state a claim upon which relief can be granted before a hearing is held. *See, e.g.*, Civ.R. 12(B)(6) (rule of civil procedure allowing courts to grant dismissal for failure to state a claim upon which relief can be granted). Here, the

majority opinion, in effect, permits a politically appointed board that holds quasi-judicial authority, *see* R.C. 3501.06 (members of boards of elections are nominated by local political parties and appointed by the secretary of state), to apply such a procedure. It is an extreme position for this court to hold that a board of elections—or in the case of a tie vote, the secretary of state, *see* R.C. 3501.11(X)—would have the power to determine a protest's validity *without* first holding a hearing. What is tantamount to a disposition under Civ.R. 12(B)(6) should remain in the hands of the judiciary, not members of boards of elections appointed by the political class. A protest calling for a candidate's removal from the ballot should be the subject of a hearing and should not be substantively decided without a hearing.

{¶ 61} It is not difficult to envision, especially at larger boards of elections, a scenario whereby the county prosecuting attorney circulates a memorandum of law to members of a board of elections recommending that, based on the unlikelihood of its substantive success, a protest be rejected as invalid without first being heard by the board. Discussion between board members occurring at a meeting leading to a vote to reject the petition without a hearing creates the potential for boards of elections to violate other laws of this State, especially R.C. 121.22, which requires boards of elections to hold open meetings. *See, e.g.*, *State v. Wood Cty. Bd. of Elections*, 1978 WL 214910, *5 (6th Dist. Nov. 2, 1978) (holding that certification by board of elections of local option petition for placement on ballot without open meeting violated R.C. 121.22). Such circumstances cause me grave concern that today's decision will encourage boards of elections to preliminarily decide the substance of election protests before hearing them and, in doing so, violate Ohio's laws requiring all official business to occur at an open meeting of the board in accordance with R.C. 121.22.

{¶ 62} Looking next to what judicial proceedings require, this court and all other courts of this State are subject to Article I, Section 16 of the Ohio Constitution, which provides: "All courts shall be open, and every person, for an

injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." While boards of elections initially determine the validity of petitions as part of their ministerial duties, *see* R.C. 3501.38 and 3501.05, they become quasi-judicial boards when determining whether to proceed on a protest request—which should be heard regardless of how many eyebrows it may raise. *See State ex rel. Nelsonville v. Athens Cty. Bd. of Elections*, 2025-Ohio-4363, ¶ 25, quoting *State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 2022-Ohio-3138, ¶ 15 ("'A board of elections exercises quasi-judicial authority when it decides a protest after a mandatory hearing that includes sworn testimony.'").

{¶ 63} The majority opinion's reliance on *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 2005-Ohio-5061, is inappropriate. That case involved a determination that a protest hearing would be a vain act based on legal issues as opposed to evidentiary facts. Many election protests are raised by ordinary citizens who are unrepresented. Often, because of the timelines required for filing a protest in order for the candidacy or issue to be placed on a printed ballot, not all of the evidence is discovered before the actual protest hearing. It would be easy for the vain-act exception—applied here in the majority opinion and the concurring-in-judgment-only opinion—to be misinterpreted and result in unwarranted filings of mandamus actions.

{¶ 64} Without this court requiring a protest hearing, a future protester could misconstrue today's decision and skip the protest proceeding altogether as being a vain act, filing instead in mandamus and causing dismissal by this court for failure to exhaust administrative remedies. *See State ex rel. Lippitt v. Cuyahoga Cty. Bd. of Elections*, 56 Ohio St.2d 70, 72 (1978) (a protest is an administrative remedy that must be exhausted before redress by this court).

{¶ 65} Today's majority opinion heightens the risk of a publicly damaging descent toward a future that denies both government transparency and access to

remedies for redress of grievances for all Ohioans. Accordingly, I concur in the majority opinion's resolution of the pending motions, and I agree with the concurring-in-judgment-only opinion that Hicks is entitled to a hearing. But I dissent from the court's judgment denying Hicks's request for a writ of mandamus. We should grant the writ and order the Clermont County Board of Elections to hold a hearing on Hicks's protest.

––––––––––––––––––––

Christopher R. Hicks, pro se.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Brian C. Shrive and Joseph T. Mooney, Assistant Prosecuting Attorneys, for respondents.

––––––––––––––––––––